# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sharon Johnson Coleman | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 10 C 761 | **DATE** | 1/27/2011 |
| **CASE TITLE** | Geraldine Viramontes vs. U.S. Bancorp et al | | |

**DOCKET ENTRY TEXT**

Plaintiff's Rule 37 Motion for Sanctions Due to Spoliation of Evidence and for Attorney's Fees and Costs of Motion [50, 55] is denied.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

Plaintiff Geraldine Viramontes ("Viramontes") brings this employment discrimination action against U.S. Bank National Association ("U.S. Bank") and U.S. Bancorp (collectively "Defendants") claiming failure to accommodate and retaliation in violation of the Americans With Disabilities Act, interference and retaliation in violation of the Family and Medical Leave Act, and retaliatory discharge in violation of the Illinois Worker's Compensation Act. Viramontes now moves for sanctions pursuant to Federal Rule of Civil Procedure 37. For the reasons stated below, this motion is denied.

### I. Background

Viramontes worked at U.S. Bank or its predecessors between September 6, 1988 and July 10, 2009. U.S. Bank maintains thousands of branches in 24 states. Viramontes worked for 10 years at the West Town branch and then worked for the next 11 years at U.S. Bank's Lincoln Park branch in Chicago. During the 21 years that Viramontes worked at U.S. Bank or its predecessors, Viramontes held the positions of receptionist, Customer Service Specialist 3, Universal Banker, and Universal Banker 2.

In July 2008, Dennis Lingenfelter ("Lingenfelter") became the manager at U.S. Bank's Lincoln Park branch where Viramontes worked. On December 8, 2008, Viramontes was seen by podiatrist Dr. Wika Gomez for a foot condition. On that day, Dr. Gomez wrote a letter to Lingenfelter stating:

> [Viramontes] has a painful hallux limitus of the left foot that has been ongoing since February 2007. She has tried conservative treatment but they did not resolve her symptoms. She continue[s] to have pain and reports difficulty with walking and standing. We have discussed surgical options, but post operatively she will require[] 6 to 8 weeks

to allow the bone cut to heal. I have advised her to request for medical leave, if necessary, in order to schedule for surgical correction.

(Doc. 42-1 at 112). Lingenfelter received Dr. Gomez's letter on December 8, 2008. Viramontes spoke with Lingenfelter about her foot condition for the first time after he received Dr. Gomez's letter.

On December 26, 2008, Viramontes fell at work and apparently injured her ankle and wrist. U.S. Bank's assistant manager Joshua Carter filed a claim for workers' compensation benefits on Viramontes' behalf. After her fall, Viramontes took a leave of absence from work. While on her leave of absence, Viramontes wrote a letter dated January 22, 2009 to U.S. Bank's human resources department complaining about Lingenfelter's "rude [and] unprofessional behavior." (Doc. 56-1 at 20). In her letter, Viramontes stated in part that everyone working at the Lincoln Park branch was "under pressure, being criticized, demoralized, and scrutinized," except the male assistant manager. Id. at 18. Viramontes also complained about Lingenfelter's actions and comments in December 2008 after learning of Viramontes' foot condition and possible surgery. Id. at 19. Viramontes concludes her letter by requesting that U.S. Bank remove Lingenfelter from the Lincoln Park branch. Id. at 20.

Viramontes returned to work on February 9, 2009 with certain restrictions. U.S. Bank states that its human resources department "worked through the basis" of Viramontes' January 22 letter, by among other things, having a meeting in late February or early March 2009 to allow Plaintiff and Lingenfelter a "fresh start, where Lingenfelter apologized to Plaintiff." (Doc. 56 at 12). U.S. Bank also offered Viramontes an opportunity to transfer from the Lincoln Park branch and away from Lingenfelter. When Viramontes declined a transfer, U.S. Bank says it reasonably believed that Viramontes' issues with Lingenfelter were amicably resolved and that "they would hear nothing more from [Viramontes] on the topic. " Id. In March 2009, Lingenfelter delivered an annual performance review to Viramontes that was an assessment of her work in 2008. Viramontes was placed her on a Performance Action Plan in April 2009. On July 10, 2009, U.S. Bank terminated Viramontes' employment.

On December 4, 2009, Viramontes filed the instant lawsuit in Cook County Circuit Court, which Defendants removed to the Northern District of Illinois. Viramontes filed a charge with the Equal Employment Opportunity Commission (EEOC) on December 7, 2009. On April 7, 2010 and after discovery began, Viramontes' counsel prepared a Proposed Electronic Discovery and Clawback Agreement for Defendants to consider. The next day, Defendants' counsel sent Viramontes' counsel an email stating:

> I have discussed the ESI issue with our client. US Bank only retains email for a 90-day period, after which the email is irretrievably destroyed. The emails you are requesting we search for date from December 1, 2008 through July 10, 2009, all of which were irretrievably destroyed starting in March 2009 and rolling through October 2009, as part of US Bank's regular email destruction program.
>
> Accordingly, there are no email searches that can be accomplished to locate any emails dated between December 1, 2008 and July 10, 2009. As a result, there is no purpose in entering into the Electronic Discovery and Clawback Agreement you have proposed. Please let me know if you would like to discuss this issue further.

(Doc. 55-7 at 1). As part of discovery, Defendants produced U.S. Bank's "Legal Records Policy," which states in part:

> Each business line must be prepared to demonstrate that it has acted promptly and in good faith to preserve records available to it that may be potentially relevant to any dispute that has resulted in or is reasonably anticipated to result in a legal or regulatory proceeding or investigation.
>
> The obligation to preserve such records under this policy arises under two circumstances: (1) when there has been notice of a legal or regulatory proceeding or investigation, or (2) when it is reasonably foreseeable that a legal or regulatory proceeding or investigation may be instituted.

(Doc. 55-3 at 1).

## II. Discussion

Viramontes contends that U.S. Bank had a duty starting on January 22, 2009 to preserve electronic correspondence concerning Viramontes, her January 22 Letter and the related investigation, her placement on a performance improvement plan and her termination. Viramontes argues that U.S. Bank's loss of emails dated January 22, 2009 through July 1, 2009 amounts to spoliation. In her current motion, Viramontes seeks sanctions in the form of an adverse inference instruction to the jury that destroyed electronic correspondence between January 22, 2009 and July 10, 2009 contained discriminatory and retaliatory statements. Viramontes also asks the Court to preclude Defendants from arguing that (1) the absence of electronic correspondence containing discriminatory or retaliatory statements shows that no such statements were made and (2) the absence of electronic correspondence is evidence that Viramontes was not subjected to discrimination and retaliation.

Spoliation occurs where a party "destroys evidence relevant to an issue in the case." Smith v. United States, 293 F.3d 984, 988 (7th Cir. 2002). "An employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case." Park v. City of Chicago, 297 F.3d 606, 615 (7th Cir. 2002). The Seventh Circuit has held that the obligation to preserve evidence arises when a party "knew, or should have known, that litigation was imminent." Trask-Morton v. Motel 6 Operating L.P., 534 F.3d 672, 681 (7th Cir. 2008); Norman-Nunnery v. Madison Area Technical College, 625 F.3d 422, 428 (7th Cir. 2010). Contrary to Viramontes' argument, a party seeking an adverse inference sanction for spoliation must also demonstrate that the information was destroyed in bad faith. Norman-Nunnery, 625 F.3d at 428; Faas v. Sears, Roebuck & Co., 532 F.3d 633, 644 (7th Cir. 2008). "'Bad faith' means destruction for the purpose of hiding adverse information." Mathis v. John Morden Buick, Inc., 136 F.3d 1153, 1155 (7th Cir. 1998).

Federal Rule of Civil Procedure 37(c)(1) states: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). In addition to or instead of this sanction, the Court may impose other appropriate sanctions. U.S. Bank does not contend that the email records sought by Viramontes in this case do not fall under the disclosure requirements of Rule 26(a)(1). Rule 37(e), however, restricts the imposition of sanctions when information is lost due to the routine operation of a party's computer system if the operation was in good faith. Rule 37(e) states: "[a]bsent exceptional circumstances, a court may not impose sanctions under [the Federal Rules of Civil Procedure] on a party for failing to provide electronically stored information lost as a result of the routine, good-faith

| STATEMENT |
|---|

operation of an electronic information system." Fed. R. Civ. P. 37(e).

With these governing legal standards in mind and after reviewing the record before the Court, Viramontes has not shown that she is entitled to sanctions. Viramontes argues that U.S. Bank's obligation to preserve evidence and issue a litigation hold arose upon receipt of her January 22, 2009 letter. According to Viramontes, her January 22 letter reasonably notified U.S. Bank about the ADA and FMLA claims asserted in the instant action which gave rise to a duty to halt routine destruction of electronic documents. In opposing the motion, U.S. Bank argues that Viramontes overstates the time period when U.S. Bank was obligated to preserve documents relevant to the litigation. U.S. Bank contends that Viramontes' January 22 letter to human resources was not written in a manner to threaten litigation or put U.S. Bank on notice of potential litigation because Viramontes had no intention of suing U.S. Bank when she prepared the letter. Instead, U.S. Bank argues, "the January 22 letter is a grievance letter to human resources drawing attention to how Plaintiff's manager had hurt her feelings, and been rude to others in the Branch, including customers." (Doc. 56 at 11). U.S. Bank maintains that there was no legal obligation on U.S. Bank to override its regular document retention program by placing a legal hold on the emails sent and received by Lingenfelter between January 22, 2009 and July 10, 2009.

The Court finds that Viramontes' January 22 letter did not put U.S. Bank on sufficient notice to anticipate a forthcoming employment discrimination action such that a duty to preserve documents relevant to her claims attached. While the duty to preserve may arise before an EEOC charge is filed, see Zubulake v. UBS Warburg L.L.C., 220 F.R.D. 212, 216-17 (S.D. N.Y. 2003), nothing in the January 22 letter suggests that litigation concerning the matters at issue in this case was imminent or reasonably foreseeable at the time Viramontes sent the letter. The January 22 Letter reported that Lingenfelter treated employees and customers in an unprofessional manner. As Viramontes wrote in the January 22 letter, "[t]hings escalated in the months of September and October 2008 with Mr. Lingenfelter's constant verbal outbursts and unprofessionalism. He displayed this type of behavior towards not only employees, but also long standing and new customers as well." (Doc. 55, Exh. 2 at VIR52). The next part of the January 22 letter complained of Lingenfelter's treatment of Viramontes after she notified him of her need for foot surgery. The January 22 letter states that "[t]he worse part of this whole ordeal was to request time (medical leave) to have foot surgery." (Doc.55, Exh. 2). Viramontes reported that Lingenfelter would only let her rest her foot on her desk during non-business hours, which did not relieve the pain. Id. Viramontes also indicated that she felt "demeaned and dehumanized by [Lingenfelter's] cruel remarks" to her about her weight possibly contributing to her foot condition.

Viramontes' initial complaint to human resources regarding Lingenfelter was not enough to put U.S. Bank on notice of potential litigation and did not trigger a duty to preserve documents. The January 22 did not assert that Viramontes might assert possible claims against U.S. Bank. In fact, Viramontes testified that she had no intention of suing U.S. Bank at the time she wrote the letter to human resources. (Doc. 56, Exh. A at 176-77). Rather than threatening litigation, Viramontes suggested a non-litigious resolution. Viramontes requested that "Mr. Lingenfelter be removed from [the Lincoln Park] branch as soon as possible." (Doc. 55 at Exh. 2 at VIR54). Viramontes then waited over ten months after her January 22 letter to bring the instant lawsuit and file her EEOC charge. Finally, Lingenfelter's testimony that "soon" after he first read the January 22 Letter, he thought that the letter gave "rise to a – some possible legal ramifications for either [him] or US Bank" was not sufficient to trigger U.S. Bank's duty to preserve. (Doc. 55, Exh. 3 at 81); Zubulake, 220 F.R.D. at 217 (stating "[m]erely because one or two employees contemplate the possibility that a fellow employee might sue

| STATEMENT |
|---|

does not generally impose a firm-wide duty to preserve."). For these reasons, the Court concludes that the January 22 letter did not put U.S. Bank on notice of impending. Nor was it reasonably foreseeable that an employment discrimination lawsuit would be instituted at that time.

The Court also finds there is no evidence that the emails were destroyed in bad faith or, put another way, that the destruction was done by U.S. Bank for the purpose of hiding unfavorable information. The record shows that the emails were destroyed in a routine manner pursuant to a neutral policy. U.S. Bank deleted the electronic communications at issue in April 2009 through October 2009–before Viramontes filed her EEOC charge and this lawsuit. No bad faith can be attributed to U.S. Bank because the duty to preserve had not been triggered when the emails were deleted and U.S. Bank did not violate its own record retention policy. Norman-Nunnery, 625 F.3d at 428-29 (citing Park, 297 F.3d at 615).

### III. Conclusion

As Viramontes has not established that U.S. Bank had a duty to preserve the emails because litigation was imminent or reasonably foreseeable or that the destruction of the emails was in bad faith, Viramontes' motion for sanctions is denied. Defendants' request for fees and costs pursuant to Rule 37(a)(5)(B) for having to respond to the motion is denied.