IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALDINE VIRAMONTES, | ) |
| | ) |
| Plaintiff, | ) Case No. 10-CV-761 |
| | ) |
| | ) Judge Sharon Johnson Coleman |
| v. | ) |
| | ) |
| U.S. BANCORP and U.S.BANK | ) |
| NATIONAL ASSOCIATION, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Geraldine Viramontes, filed a complaint against defendants, U.S. Bancorp and U.S. Bank National Association, (hereinafter, ("U.S. Bank"), and collectively, the ("defendants")), alleging the following claims: interference and retaliatory discharge under the Family and Medical Leave Act, (the "FMLA"); failure to reasonably accommodate and retaliation under the Americans with Disabilities Act, (the "ADA") and retaliatory discharge under the Illinois' Worker's Compensation Act (the "IWCA"). Defendants' now move for summary judgment on all claims. For the reasons that follow, defendants' motion for summary judgment is granted in part and denied in part.

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of

1


material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party when deciding a motion for summary judgment. *Abdullahi v. City of Madison*, 423, F.3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

**Background**

Plaintiff, Viramontes, worked as an at-will employee of U.S. Bank (or its predecessors) from September 6, 1988 until July 10, 2009. (Fourth Am. Compl. ¶¶ 1, 7.) Plaintiff worked her first 10 years with U.S. Bank in their West Town branch and her last 11 years in their Lincoln Park branch. (*Id*. at ¶ 10.) In 2002, plaintiff became a Universal Banker 2 at the Lincoln Park branch. (Pl. Dep. 45:20-22).

In July 2008, Dennis Lingenfelter, ("Lingenfelter") became plaintiff's manager at U.S. Bank's Lincoln Park branch. (Defendants' Statement of Material Facts ¶ 10.) On December 8, 2008, plaintiff was seen by podiatrist, Dr. Wika Gomez, for her on going foot condition. (Fourth Am. Compl. ¶ 19.) Dr. Gomez confirmed that plaintiff was suffering from hallux limitus, a foot condition characterized by lack of motion in the first metatarsal phalangeal joint. (*Id*. at ¶ 20.) Dr. Gomez explained to the plaintiff that conservative treatments had not resolved her problem and informed her of the possible need for surgery. (*Id*.) Dr. Gomez also informed plaintiff that she would be available on December 22, 2008 to perform plaintiff's surgery. (*Id*. at ¶ 29.)

On this same day, December 8, 2008, Dr. Gomez wrote a letter to Lingenfelter explaining that she and the plaintiff discussed the possibility for surgical intervention to repair plaintiff's hallux limitus condition. (*Id.* at ¶ 27.) The letter also indicated that plaintiff would require 6-8 weeks for recovery and that Dr. Gomez advised plaintiff to discuss the need for medical leave with her employer so that a surgery could be scheduled. (*Id.* at ¶ 28.) Following his receipt of the letter, Lingenfelter spoke directly with plaintiff regarding her hallux limitus condition and her need for surgery. (*Id.* at ¶ 22.) Initially, plaintiff alleges, Lingenfelter allowed her medical leave starting December 22, 2008. Later, however, Lingenfelter pleaded with plaintiff to postpone the surgery until January 2009 due to the likelihood that the branch would be short-staffed during the holiday season. (*Id.* at ¶¶ 31, 41.)

Also in December 2008, due to the worsening nature of hallux limitus, plaintiff asked Lingenfelter if she could sit while she worked behind the teller line. (Pl. Dep. Ex. 3, Jan. 22, 2009 Letter) In response, plaintiff alleges that Lingenfelter remarked that she "had an excuse for everything" but allowed her to elevate her foot during certain specified time periods and to sit in the teller area. (*Id.*)

As the intended date for surgery, December 22, 2008, grew closer, plaintiff alleges that she had a number of conversations with Lingenfelter regarding her foot condition and need for surgery. During these conversations, she further alleges that Lingenfelter made several statements which plaintiff interpreted as threats to her job security. (Fourth Am. Compl. ¶¶ 34-39). These statements include the following: "It's not like you need surgery tomorrow when you can still walk, right?"; "I will remember you."; "You have to make a decision." and "I will deal with you later." (*Id.*)

3

On December 15, 2008, plaintiff again spoke with Dr. Gomez, and having received nothing in writing from Lingenfelter allowing her time for requested leave, plaintiff and Dr. Gomez agreed to schedule her surgery for sometime in January or February of 2009. (Pl. Dep. 164:13-165:18.)

On December 26, 2008, plaintiff fell at work and suffered injuries to her ankle and wrist. (*Id*. at ¶ 45.) Lingenfelter was not present at the time of plaintiff's fall. On that same day, U.S. Bank's assistant manager, Joshua Carter, filed a claim for worker's compensation benefits' on behalf of the plaintiff following her fall. (*Id*.) Because of the injuries sustained during the fall, plaintiff took immediate FMLA leave from work. (*Id*. at ¶ 47.) While on leave, plaintiff wrote a letter, dated January 22, 2009, to U.S. Bank's human resources department (the "H.R. Department") complaining about Lingenfelter's "rude and unprofessional behavior" as well as his comments made in December 2008 after learning of plaintiff's foot condition and possible surgery. (*Id*. at ¶ 53; Pl. Dep. Ex. 3, Jan. 22 Letter.) Plaintiff concluded her letter by requesting that U.S. Bank remove Lingenfelter from the Lincoln Park branch. (*Id*.)

Also while on FMLA leave, plaintiff alleges that Lingenfelter demanded that she ignore her doctor's orders and return to work for a meeting. Upon her decline to do so, plaintiff further alleges that Lingenfelter taunted her and stated that she was severely behind on her work and would never be able to catch up. (*Id*. at ¶¶ 48, 49.)

Plaintiff returned to work on February 8, 2009 from medical leave with certain restrictions having been placed upon her by her doctor. (*Id*. at ¶ 52.) Upon her return, U.S. Bank alleges that it responded to plaintiff's January 22, 2009 letter by meeting with plaintiff and Lingenfelter. During this meeting, Lingenfelter allegedly apologized to

4

plaintiff. (Lingenfelter Dep. 99:17-21.) Plaintiff, on the other hand, alleged that Lingenfelter was investigated by U.S. Bank as a result of her letter. (Fourth Am. Compl. ¶ 53.)

In March 2009, following his alleged investigation, Lingenfelter gave plaintiff an annual performance review of her work completed in 2008. (Defendants' Statement of Material Facts ¶ 62). As a result of this review, plaintiff was placed on a performance action plan for failing to make customer follow-up calls. (Fourth Am. Compl.¶¶ 54.) After placing plaintiff on the performance action plan, on July 10, 2009, Lingenfelter met with plaintiff and informed her that she had been terminated for failure to meet the expectations set forth in the performance action plan. (*Id*. at ¶ 55.) Plaintiff, however, believes she was terminated in retaliation for informing Lingenfelter of her foot condition, requesting accommodations for her foot condition, requesting and taking FMLA leave and for filing a claim for worker's compensation. (*Id*. at ¶¶ 2, 57.) Accordingly, plaintiff brings forth the following claims: FMLA interference and retaliatory discharge (counts I and II); ADA discrimination for failure to reasonably accommodate and retaliation (counts III and IV); and IWCA retaliatory discharge (count V). We will address each claim in turn.

## Discussion

### *U.S. Bancorp's Status as a Defendant*

First, defendants argue that U.S. Bancorp is not a proper defendant to this matter because it was not the plaintiff's employer. Plaintiff argues that because U.S. Bank is a subsidiary of U.S. Bancorp, U.S. Bancorp jointly controlled plaintiff's employment with

5

U.S. Bank. *See* 29 C.F.R. § 825.104(c)(1); 29 C.F.R. § 825.106(a)(2). Defendants note that U.S. Bancorp is a holding company that has no employees of its own. Furthermore, the record shows that U.S. Bank paid the plaintiff's wages, payroll taxes and unemployment compensation. However, also included in the record is an exhibit to Lingenfelter's deposition entitled "U.S. Bancorp Job Description" which outlines the essential functions and specifications for a Universal Banker 1 and Universal Banker 2. (Lingenfelter Dep. Ex. 4). The exhibit also indicates that U.S. Bancorp set the minimum qualifications, level and grade assignments for both positions. *Id*. Additionally, the document includes the following language, "It is the individual responsibility of every employee to maintain a current awareness and understanding of and to fully comply with US Bancorp's 'Code of Ethics.'" (*Id*. at 1.) In this case, defendants claim that plaintiff was fired for failure to meet the requirements of the Universal Banker 2 position. Based on the record, these requirements were determined by U.S. Bancorp, suggesting that US Bancorp may have exhibited some control over plaintiff's employment. Consequently, the court does not deem it appropriate to dismiss U.S. Bancorp from the lawsuit at this time. Therefore, defendants motion to dismiss all claims against U.S. Bancorp is denied.

*FMLA Interference Claims*

1.   *FMLA Posted Information*

Plaintiff's first allegation against defendants' is that they interfered with, restrained and denied her FMLA rights. An employee claiming FLMA interference must establish that: (1) she was eligible for FMLA protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient

notice of her intent to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW, Inc*. 472 F.3d 471, 477 (7th Cir. 2006) (citing *Hoge v. Honda Am. Mfg.*, 384 F.3d 238, 244 (6th Cir. 2004)).

Here, plaintiff claims that Lingenfelter and U.S. Bank interfered with, restrained and denied her FMLA rights, in violation of 29 U.S.C. § 2615(a)(1) by failing (1) to post and keep posted a notice explaining FMLA's provisions and (2) to provide plaintiff timely or written notice to take FMLA leave. Plaintiff is correct that employers are required to post and keep posted, in a conspicuous and prominent place, a notice explaining FMLA's provisions and procedures. 29 U.S.C. § 2619. Defendants, however, assert that this claim is meritless because an affidavit from Cindy Lopez, a U.S. Bank Operation Specialist, indicated that when U.S. Bank's Lincoln Park branch was audited for compliance with the FMLA in 2008 and 2009, the branch was found to have updated FMLA posters in the branch's break room. (Lopez Dep. 40:9-13, Mar. 24, 2011; Lopez Aff. 5.) Defendants also produced a copy of this FMLA posting into evidence. (Lopez Aff. Ex. 1, FMLA Poster.) At oral argument, plaintiff did not refer to any evidence or assert any argument to contest this fact. As such there is no material dispute over this issue. Therefore, this Court will grant defendants' summary judgment motion with respect to this portion of this claim.

2.      *Providing Plaintiff with Written Notice to Take FMLA Leave*

Plaintiff also asserts that defendants interfered with her FMLA rights by not allowing her leave for surgery on December 22, 2008 and for 6-8 weeks of subsequent recovery. While it is true that the FMLA statute forbids an employer from discouraging

7

an employee from using FMLA leave, the statute also requires that, prior to taking FMLA leave, "the employee must consult with employer and make a reasonable effort to schedule the leave so as not to unduly disrupt the employer's operations." 29 C.F.R. §§ 825.220(b), 825.302(e). Specifically, pursuant to 29 C.F.R. § 825.302(a)-(b), employees must provide 30 days' advance notice of the foreseeable need for FMLA leave or notice "as soon as practical" where a 30 days' notice is not practicable. Thus, the FMLA does allow an employee to provide shorter notice in certain circumstances, but does not allow for shorter notice when longer notice could have readily been given. *Gilliam v. United Parcel Service*, 233 F.3d 969, 970 (7th Cir. 2000). Further, if the required notice, either notice of 30 days or notice that is as soon as practicable, is not given, the employer is under no duty to grant leave. *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 724 (7th Cir. 2006), (citing *Aubuchon v. Knauf Fiberglass GmbH*, 359 F. 3d 950, 951 (7th Cir. 2004)).

On December 8, 2008, plaintiff first mentioned her desire to take FMLA leave to begin on December 22, 2008. Thus, plaintiff failed to give defendants 30 days' notice. Therefore, plaintiff's notice triggered rights to an FMLA leave commencing on December 22, 2008 only if a 30-day notice was not practicable. Here, the undisputed facts demonstrate that a 30-days' notice was in fact practicable. As was indicated in the complaint, the December 22, 2008 date was suggested by Dr. Gomez because of Dr. Gomez's availability, not the plaintiff's medical needs. Further, in Dr. Gomez's note there was no mention of any required date on which surgery needed to occur. (Pl. Dep. Ex. 12, Dr. Gomez Letter, Dec. 8, 2008.) Instead, on December 15, 2008, plaintiff and her doctor scheduled her surgery to take place in January 2009. Lastly, and most significant, plaintiff's hallux limitus actually took place as late as August 2010.

Plaintiff does not dispute these facts. Instead, she believes that because she failed to have surgery on December 22, 2008, she fell and sustained injuries to her ankle and wrist on December 26, 2008. Therefore, she contends that her subsequent fall serves as evidenced that surgery top repair her foot condition was required on December 22, 2008. In support, plaintiff offers the opinion testimony of doctor, Mark Godsel, who first took plaintiff under his care on August 4, 2010. In Godsel's opinion, it was possible that balance issues resulting from plaintiff's bunions may have caused her to fall on December 26, 2008. Pl.'s Ex. K. Plaintiff's argument presumes that the foreseeability of the need for surgery at the time of the plaintiff's request for leave, or the propriety of the defendants' reaction to that request is affected by medical diagnosis conducted well after the requested leave date. Plaintiff has not identified any precedent supporting this presumption and this Court's research has revealed none.

Based upon these undisputed facts, plaintiff's surgery should have been scheduled in such a manner that would have allowed her to give defendants a full 30 days' notice of her need to take FMLA leave. Because plaintiff failed to do so, not only were defendants within their right to deny plaintiff's FMLA request, but also, plaintiff has failed to meet the requirements to establish a FMLA interference claim. Consequently, defendants' motion for summary judgment is granted with respect to all FMLA interference claims in this matter.

*ADA Discrimination Claim*

In addition to her FMLA claims, plaintiff also brings forth a discrimination claim under the ADA. Plaintiff contends that her hallux limitus condition rendered her a

qualified individual with a disability and Lingenfelter failed to reasonably accommodate this disability by prohibiting her from elevating her foot at work during business hours. Defendants, however, believe that because plaintiff's impairment does not rise to the level of a disability, all of plaintiff's claims under the ADA should be dismissed.

To prevail on summary judgment on an ADA discrimination claim for failure to accommodate, a plaintiff must show that "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability and (3) the employer failed to reasonably accommodate her disability." *EEOC v. Sears Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). In order to meet the first requirement – that plaintiff is a qualified individual with a disability – a plaintiff must demonstrate that "(1) she has a physical or mental impairment that substantially limits one of her major life activities; (2) she has a record of such impairment or (3) she is regarded as having such impairment." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (citing 42 U.S.C. § 12102(2) (A)). A plaintiff has that has an impairment that substantially limits a major life activity when the plaintiff is "unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id*. (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii)). Plaintiff contends that her hallux limitus substantially limited her ability to walk, qualifying her as disabled. Further, plaintiff believes that Lingenfelter regarded her as disabled.

The facts presented do not support either of the plaintiff's contentions. While plaintiff has demonstrated that she has an impairment, she has not provided any evidence that suggests that this impairment rises to the level recognized by the Seventh Circuit as a

disability. Other than stating that she has had difficulty walking between her various work stations, plaintiff does not identify any specific time and distance limitations on her walking ability. *Squibb v. Memorial Med. Centr.*, 497 F.3d 775, 784 (7th Cir. 2007) (holding that because plaintiff could not identify any specific limitations such as time or distance on her ability to walk, the plaintiff was not disabled). The only additional evidence relating to plaintiff's abilities was her own testimony in which she mentions no restrictions. Instead, she states that she was able to stand, sit, turn and walk without any medical restrictions. Pl. Dep. 212: 7-10. The Court does recognize that on December 26, 2008, plaintiff did suffer a fall at work which *may* have been the result of balance issues caused by her foot condition, but that incident does not compare to the severity of the evidence that the Seventh Circuit has found necessary to classify a plaintiff as disabled. *Squibb,* 497 F.3d 775, 784 (7th Cir. 2007) (finding that plaintiff who needed breaks walking every 30 minutes was not considered disabled); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d at 802 (holding that an employee is disabled when she could walk no more than one block and where she felt as though she had to use both her hands to lift each leg to take one step at a time).

  Further, plaintiff has failed to establish that she was "regarded as" having a disability. In order to prove that the defendant regarded plaintiff as having a disability, plaintiff must demonstrate that the employer believed that the plaintiff had an impairment that substantially limited one or more major life activities. *Kampmier*, 472 F.3d at 937-38. It is not necessary for the plaintiff to actually be disabled, for it to be held that an employer regarded plaintiff as disabled. *See Brunker v. Schwan's Home Service, Inc.*, 583 F.3d 1004, 1008 (finding that although plaintiff did not qualify as disabled, plaintiff

11

offered sufficient evidence to show that his employer regarded him as disabled). However, "[i]f the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Kampmier*, 472 F.3d at 938 (quoting *Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002)).

Here, plaintiff claims that Lingenfelter had notice of her difficulties walking and allowed her to elevate her foot during certain time periods. She also alleges that he witnessed her limping, knew she was in pain at work and was aware of her plan to undergo surgery. While plaintiff's assertions demonstrate that Lingenfelter was aware that she had a foot condition, the assertions do not establish that Lingenfelter though plaintiff was disabled. *See Squibb*, 497 F.3d at 786 (holding that an employer's notice of plaintiff's disabilities does not mean that the employer regarded plaintiff as disabled). Lingenfelter never altered the plaintiff's job requirements or his expectations of her work performance to suggest that he thought her impairment rose to a level that affected her ability to complete work tasks. *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 749 (7th Cir. 2011) (finding that because plaintiff did not demonstrate that employer thought that her impairment was serious enough to affect her ability to perform a class or range of jobs, plaintiff failed to establish that employer regarded her as disabled). To the contrary, plaintiff consistently complained that Lingenfelter underestimated the severity of plaintiff's impairment as opposed to elevating her to disabled status. Because the plaintiff has identified no evidence that would support a finding that she was disabled or regarded as such by her employer, plaintiff has failed to meet the requirements to prevail on a

claim of discrimination under the ADA. Thus, the defendants' motion for summary judgment is granted with respect to the ADA discrimination claim.

*Retaliation Claims*

In July 2009, plaintiff's employment with defendants was terminated. As a result of this termination, plaintiff has brought forth three claims of retaliation against defendants – one under each of the IWCA, FMLA and ADA. We will address each claim in turn.

*1.     IWCA Retaliation*

Plaintiff claims that because she sought workers' compensation for her fall on December 26, 2008 under 820 ILCS 305/4(h), Lingenfelter placed her on a performance action plan and eventually terminated her from U.S. Bank. To prevail on a claim of retaliation under the IWCA, plaintiff must allege that "(1) she was an employee of the employer before or at the time of the injury; (2) she exercised a right granted by the IWCA and (3) her discharge was causally related to the exercise of that right under the Act." *Ridings v. Medical Centr.*, 537 F.3d 755, 772 (7th Cir. 2008). If the employer can demonstrate a valid basis for discharging the plaintiff that is not pretextual, the third element of causation is not met. *Id*.

Here, plaintiff has clearly met the first two elements to prevail under the IWCA; she was an employee of the defendants on December 26, 2008 when she fell at U.S. Bank's Lincoln Park branch and she filed a claim under the IWCA. Plaintiff attempts to

satisfy the third element – demonstration of a causal relationship between the first two elements – through circumstantial evidence.

Unlike the federal claims asserted by the plaintiff, the IWCA only seeks to protect the employee's right to recover benefits, not a right to keep her job while absent. *See McEwen v. Delta Air Lines, Inc*. 919 F.2d 58, 60 (7th Cir. 1990); *Hiatt v. Rockwell International Corp*., 26 F.3d 761, 768 n.5 (7th Cir. 1994). Therefore, when looking at the plaintiff's circumstantial evidence, this Court is looking for evidence of antagonism against the benefit claim, not antagonism against the plaintiff's conduct while at work or away from it.

Plaintiff first claims that while on FMLA leave, Lingenfelter demanded that she return to work immediately for a banker's meeting, notwithstanding her doctor's order that she was to remain absent from work for six (6) weeks. This evidence fails to suggest a causal connection between her workers' compensation claim and her termination. Lingenfelter's insensitive request that plaintiff return to work while on FMLA leave does not have an apparent connection to plaintiff's worker's compensation claim and therefore fails to suggest any discriminatory motivation against the plaintiff for filing a workers' compensation claim.

Plaintiff's second piece of circumstantial evidence is that Lingenfelter sabotaged her efforts to keep her job by requiring her presence at all times in the teller area. Plaintiff claims that this prevented her from making customer follow up calls which ultimately served as the foundation of her termination. A deposition by another supervisor confirms that plaintiff was not allowed the requisite half hour each day to make these calls. Even if the court accepts that Lingenfelter placed plaintiff at a

disadvantage, the plaintiff has failed to put forth any evidence that Lingenfelter sabotaged plaintiff *because* she filed a workers' compensation claim. The evidence instead shows that Lingenfelter was often hostile and difficult to several people, including employees and customers alike. Therefore there is no reason to believe that Lingenfelter's alleged sabotage was the result of any animus towards plaintiff for filing a worker's compensation claim nor is there evidence to suggest that had plaintiff not filed a workers' compensation claim, she would have been given more time to complete her customer follow up calls and she would not have been fired. Instead, it was one of plaintiff's supervisors at U.S. Bank who filed the claim on plaintiff's behalf. Therefore, it is nonsensical to believe that U.S. Bank sought to disrupt plaintiff's work productivity or interrupt plaintiff's FMLA leave because they previously filed a worker's compensation claim on her behalf.

      Plaintiff's only piece of evidence that suggests antagonism against her assertion of her workers' compensation right is that in a short time after plaintiff filed workers' compensation claim she was placed on a performance action plan by Lingenfelter. In certain circumstances, an adverse employment action on the heels of the protected activity can be considered adequate evidence of retaliation. *Mobley v. Allstate Ins. Co.,* 531 F.3d 539, 547 (7th Cir. 2008). Temporal proximity evidence, however, is rarely sufficient in and of itself to create a jury issue on causation. *Id.* The mere fact that plaintiff's worker's compensation claim preceded her termination does nothing to prove that her worker's compensation claim caused her termination. *See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001). Without any additional evidence demonstrating a possible connection between the plaintiff's

worker's compensation claim and her termination, defendants' summary judgment motion is granted with respect to this issue.

2.   *ADA Retaliation Claim*

In addition to her state retaliation claim, plaintiff also claims that her termination was the result of her exerting her rights under the ADA. Specifically, plaintiff believes that she was terminated because she wrote a letter to the H.R. Department, in which she complained of Lingenfelter's failure to reasonably accommodate her hallux limitus condition.

The ADA prohibits employers from retaliating against employees who assert their right to be free from discrimination. 42 U.S.C. § 12203(a). Furthermore, employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) Therefore, despite the fact that this Court has dismissed plaintiff's ADA discrimination claim, plaintiff's claim of retaliation under the ADA remains viable.

To survive summary judgment, a plaintiff can establish a valid case of retaliation under the ADA by using either the direct or indirect method of proof. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). To establish a case of ADA retaliation under the direct method of proof, a plaintiff must show that (1) she engaged in protected activity; (2) suffered an adverse employment action and (3) the two were causal connected. *Turner v. The Saloon Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010).

Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet her burden. Because there is no direct evidence of discrimination in this case, the Court will look to plaintiff's circumstantial evidence to determine whether plaintiff was unlawfully terminated. "The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). The plaintiff does not need to produce evidence in each category to prevail against a claim of summary judgment. *Diaz v. Kraft Foods Global Inc.*, 653 F.3d 582, 586-87 (7th Cir. 2011).

As to the first element of the direct method, plaintiff argues that she engaged in protected activity when she wrote a letter to the H.R. Department in which she complained that Lingenfelter failed to reasonably accommodate her because of her hallux limitus condition. Defendants, however, contend that plaintiff's letter simply discussed Lingenfelter's "rude and unprofessional" behavior and did not rise to the level of protected activity. Plaintiff's letter clearly states that she suffered from a foot injury, informed her supervisor of this injury and requested, but did not receive accommodations from her supervisor for her foot injury. Although plaintiff's letter does include an extended narrative of disjointed and unrelated complaints, "[p]erfection is not a requirement for protection" under the ADA. *Dickerson*, 657 F.3d at 603 (quoting

17

*Schandelmeier–Bartels v. Chicago Park District*, 634 F.3d 372, 376 (7th Cir. 2011)). While plaintiff does not state verbatim that Lingenfelter failed to reasonably accommodate her disability in violation of her rights under the ADA, plaintiff's letter does describe in sufficient detail Lingenfelter's failure to accommodate her foot condition such that writing the letter and submitting it to the H.R. Department constituted protected activity. Thus, plaintiff meets the first element necessary to survive summary judgment under the direct method.

As to the second element, it is not in dispute that plaintiff's termination constituted an adverse action. Having met the first two requirements, plaintiff lastly must demonstrate a causal connection between her complaint alleging violations of her ADA rights and her subsequent termination. Plaintiff believes that her termination was motivated by retaliation due to certain ambiguous statements made by Lingenfelter, the suspicious timing of her placement on a performance action plan and Lingenfelter's failure to allow her time to satisfactorily complete certain job requirements. Instead, defendants argue that plaintiff was terminated strictly based upon her declining work performance and failure to meet expectations set out in her past performance reviews.

Based upon the significantly varied accounts by both parties and the large amount of contested facts regarding plaintiff's termination, it appears that this issue comes down to a credibility issue between the plaintiff and defendant. Therefore, this decision should be made by a trier of fact after presentation of evidence. While this evidence may not be overwhelming, it is neither too porous to deny the plaintiff an opportunity before a jury. Therefore, with respect to this claim, summary judgment is denied.

3.  *FMLA Retaliation Claim*

In addition to plaintiff's ADA and state retaliation claims, plaintiff lastly claims that her termination from U.S. Bank violated her FMLA rights. Although it is unclear from both the complaint and plaintiff's brief what FMLA action plaintiff believes her employer retaliated against, we will assume for purposes of this opinion, that it was plaintiff's exercise of her right to take FMLA medical leave. FMLA provides that it is unlawful for an employer to "discharge or in any manner discriminate against" any employee exercising their substantive FMLA rights. 29 U.S.C. §§ 2615(a)(2), 2615(b); 29 C.F.R. § 825.220(c). To show actionable retaliation under the FMLA, the plaintiff must establish the same three elements as with her ADA retaliation claim. Additionally, the Seventh Circuit has explained that a plaintiff using the direct method on FMLA retaliation claims can survive summary judgment if she creates a triable issue of whether the adverse employment action had a discriminatory motivation. *Shinn v. Afton Chemical Corp.*, 2009 WL 3156699, at *3 (S.D. Ill. 2009) (citing *Lewis v. School District # 70*, 523 F.3d 730, 741 (7th Cir. 2008)). The plaintiff does not need to show that retaliation was the only reason for her termination; just that the protected conduct was a substantial or motivating factor in the employer's termination decision. *Lewis*, 523 F.3d at 741-42.

As for the first two elements of the direct method, it is undisputed that plaintiff took FMLA leave from December 26, 2008 until February 7, 2009 and that plaintiff was terminated by U.S. Bank. Therefore, again, this claim turns on the third element, whether there is a causal connection between plaintiff taking FMLA leave and her termination. For the same reasons that summary judgment for plaintiff's ADA retaliation claim was denied, summary judgment is denied here also. Plaintiff again relies on the previous

statements made by Lingenfelter discouraging her from taking FMLA leave, Lingenfelter's demand that she return to work while on leave and Lingenfelter placing her on a performance action plan shortly after he was investigated by U.S. Bank as a result of plaintiff's complaint letter to support her argument. While defendants again disclaim any causal connection between plaintiff's FMLA leave and her termination, we believe, based upon the circumstantial evidence put forth, there is a possibility that a jury could find otherwise. Therefore, as is the case with plaintiff's ADA retaliation claim, summary judgment is denied.

**Conclusion**

For the reasons stated above, this Court denies defendants' motion for summary judgment in part and grants it in part.

It is so ordered.

December 27, 2011
_____
Date

_____
Hon. Sharon Johnson Coleman
United States District Court